Lee Telephone Company v. Commissioner.
Lee Tel. Co. v. Commissioner
Docket No. 59011.
United States Tax Court
T.C. Memo 1957-230; 1957 Tax Ct. Memo LEXIS 18; 16 T.C.M. (CCH) 1044; T.C.M. (RIA) 57230; December 16, 1957
*18 In 1949, petitioner sold its entire issue of 5 per cent cumulative preferred stock to an insurance company for $500,000. It paid dividends on the stock in 1951, 1952, and 1953. On its return for 1953, it claimed that the dividends were interest and, accordingly, claimed a deduction for interest paid in the amount of such dividends. It now claims that dividends paid on the preferred stock in 1951 and 1952 are also deductible as interest. On its returns for 1951, 1952, and 1953, it amortized and deducted the expenses incurred in issuing the preferred stock. Held, the amounts received by petitioner from the sale of its 5 per cent cumulative preferred stock represented an investment of equity capital by the purchaser, and dividend payments made by petitioner in 1951, 1952, and 1953 were, in fact, dividends and not interest paid for the use of borrowed money. Held, further, the expenses incurred in issuing the preferred stock were not deductible. Charles A. G. Dawe, Esq., P.O. Box 71, Irvington, Va., for the petitioner. Bernard J. Boyle, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies in income tax: Income Tax
Year
Deficiency
1951
$ 557.02
1952
563.25
1953
12,283.15
The issues to be decided are: (1) Whether dividends which petitioner paid on its preferred stock during the years in issue were, in fact, interest payments and therefore deductible under section 23(b); and (2) whether expenses incurred in issuing such preferred stock were amortizable and deductible during the years in issue. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner is a Virginia corporation with its principal place of business at Martinsville, Virginia. It filed its return for the year 1951 on an accrual basis with the former collector *20 of internal revenue at Richmond, Virginia, and its returns for the years 1952 and 1953 on such basis with the director of internal revenue at Richmond. Petitioner is a telephone company which operates in Virginia and in a small part of North Carolina. It provides telephone service for an area with an estimated population of approximately 130,000 people. Petitioner is a public utility and is subject to the regulations of the Virginia State Corporation Commission (hereinafter referred to as the Virginia Commission), and the North Carolina Utilities Commission. The Virginia Commission generally prohibits a public utility such as petitioner from having a funded debt in an amount in excess of its equity capital and accumulated surplus. On December 8, 1948, the Virginia Commission authorized petitioner to issue $400,000 of 4 per cent debentures, due November 1, 1964. The issuance of the debentures raised petitioner's debt ratio from 54.4 per cent to 65.4 per cent. In approving the issuance of the debentures, the Commission prohibited petitioner from paying any dividends on common stock until its debt ratio had been sufficiently lowered to bring it within the bounds of proper conservative *21 standards generally required by the Commission. The report of the Commission's chief accountant with reference to the proposed issuance of $400,000 of debentures mentioned that petitioner was then considering issuing $500,000 of preferred stock, and that such an issue would bring its debt ratio back to 50.3 per cent. Petitioner was constantly expanding its telephone service and for that reason needed additional funds. Its telephone plant assets, exclusive of any allowance for depreciation, increased as follows: Date
Amount
December 31, 1947
$1,664.797
December 31, 1948
1,995.317
December 31, 1949
2,615,749
December 31, 1950
3,078,037
December 31, 1951
3,568,799
December 31, 1952
4,062,107
December 31, 1953
4,678,012
On January 1, 1949, petitioner's only issued and outstanding capital stock was 28,500 shares of $10 par value common stock, all of which was owned by its then president, B. L. Fisher. Its long-term indebtedness on that date consisted of $684,000 of 3 per cent mortgage bonds due December 31, 1971, and the $400,000 of 4 per cent debentures issued in 1948. Pursuant to the intention expressed to the Virginia Commission in 1948, petitioner, *22 in 1949, took steps to secure a purchaser for its proposed preferred stock issue. In August 1949, it contacted the Equitable Securities Corporation of Nashville, Tennessee, and was advised that Equitable could probably secure a purchaser for the stock if the dividends were 5 1/2 per cent, and if a sinking fund for the ultimate redemption of the stock, in the amount of 3 per cent of the total issue per annum, was provided for. On November 10, 1949, petitioner's board of directors adopted a resolution increasing the maximum authorized capital stock to $1,500,000 which was to be composed of 5,000 shares of $100 par value 5 per cent cumulative preferred, and 100,000 shares of $10 par value common stock. The action of the board of directors was ratified by petitioner's sole stockholder on December 6, 1949. On December 14, 1949, the Virginia Commission received and duly admitted to record the amendment to petitioner's charter which, in addition to the aforementioned provisions as to the number and par value of the preferred and common shares, contained the following additional provisions: The preferred stock was officially designated as 5 per cent cumulative preferred stock; the holders *23 of such stock were entitled to receive out of net profits or net assets in excess of capital or surplus, dividends at the rate of 5 per cent per annum, when and if declared by the board of directors; the 5 per cent cumulative preferred stock was to be preferred over the common as to both earnings and assets, in the event of any liquidation, dissolution, or winding up of the corporation; a sinking fund of $15,000 per year was to be provided out of the net profits or surplus for the ultimate retirement or purchase of the preferred shares; and if the dividends on the preferred stock were in arrears for a period of 18 or more months, but not otherwise, the holders thereof, as a class, were entitled to elect a majority of petitioner's board of directors. The Virginia Commission and the North Carolina Utilities Commission approved the proposed changes in petitioner's capital structure. On November 30, 1949, petitioner agreed to sell the Jefferson Standard Life Insurance Company of Greensboro, North Carolina (hereinafter referred to as Jefferson Standard), its entire issue of preferred stock as provided for in its charter amendment. On December 6, 1949, Jefferson Standard agreed to purchase *24 the stock, and on December 27 petitioner received the sum of $500,000 from Jefferson Standard for which it issued the 5,000 shares of $100 par value preferred stock. Petitioner paid the following amounts of dividends to Jefferson Standard during the indicated years: Year
Amount
1951
$24,250
1952
23,500
1953
22,750 Petitioner also paid $15,000 during each of the aforementioned years into a sinking fund, and such payments were used to redeem a like amount of stock during each of such years. Jefferson Standard invested millions of dollars in corporate stocks. It intended to purchase and did purchase preferred stock issued by petitioner. The parties stipulate that its books and records and income tax returns always reflected such preferred shares as stock, and the dividends received as dividends. Petitioner's books, records, and income tax returns have always referred to the preferred shares as stock, and dividends have been charged to surplus. On its returns for 1951 and 1952, petitioner did not claim that the dividends paid during such years were deductible. It did claim that the dividends paid for 1953 were deductible, although it designated the payments *25 as dividends. In all three years it claimed that it was entitled to amortize and deduct from its gross income the expense incurred in issuing its preferred stock. The respondent determined that the expenses incident to the issuance of preferred stock were not deductible expenses, and that the dividends paid in 1953 were not deductible as interest. Petitioner now claims that the dividends paid in 1951 and 1952, as well as those paid in 1953, were deductible as interest. In 1951 and 1952, petitioner increased its funded debt by an additional $700,000. The amounts received by petitioner from the sale of its preferred stock represented an equity capital investment by Jefferson Standard, and the dividends paid by petitioner during 1951, 1952, and 1953 were, in fact, dividends and not interest on borrowed money; and the expenses incident to such sale were a capital expenditure. Opinion RICE, Judge: This case presents the familiar question of whether ostensible dividend payments were, in reality, interest payments on indebtedness. The statute draws the line clearly between interest payments and dividends. The former are deductible; the latter are not. Since deductions are entirely *26 a matter of legislative grace, a taxpayer must show that the payments in question were, in fact, interest and not dividends. (C.A. 8, 1950), affirming a Memorandum Opinion of this Court dated May 4, 1949 [, (C.A. 3, 1943), affirming ; (C.A. 3, 1943), affirming a Memorandum Opinion of this Court dated March 12, 1942. "Dividends" and "interest," "stocks" and "bonds," are clearly identifiable concepts, but the provisions of many modern security devices often obliterate the usual signposts which identify indebtedness or equity capital, so that a given security instrument points in both directions at the same time. Preferred stock by its very nature embodies some of the protective features ordinarily associated with bonded indebtedness. In its traditional concept, however, it is nevertheless an instrument evidencing an investment of risk capital in a corporation. . In considering *27 these cases, the courts have frequently indicated certain criteria which are helpful guides in reaching a decision. Among them are: the name given to the instrument; the presence or absence of a maturity date; the source of the periodic "interest," "dividend," and "redemption" payments; the rights possessed by the holder of the instrument in the event of default of the payments provided thereunder; the right of the holder to participate in the management of the corporation; the status of the holder with respect to general corporate creditors; and the true intention of the parties as evidenced by all of the surrounding facts. We find nothing here which distinguishes petitioner's 5 per cent cumulative preferred stock from the ordinary type of corporate preferred stock. The issue was called "preferred stock" and so treated by both buyer and seller on their respective books; the corporate charter provided that dividends were payable out of net profits or net assets in excess of capital at the discretion of the directors and that sinking fund payments were to come from net profits or surplus; the holder possessed no rights of a creditor in the event of default of dividend payments - only *28 the right of controlling the corporation; the holder otherwise possessed no voice in corporate management, but that is a somewhat common provision of preferred stock; the rights of the holder were superior only to the common shareholders and were not equal to or superior to those of general corporate creditors; the parties stipulated that Jefferson Standard intended to and did purchase preferred stock, and both it and petitioner always referred to the issue as stock and the dividends as dividends; a sinking fund was provided which indicated that the shares would probably be retired at the end of 33 1/3 years; but, on this record, that fact, upon which the petitioner relies heavily, does not persuade us that Jefferson Standard was a creditor rather than an investor. (C.A. 10, 1955); ; . The cases dealing with this question are legion. No purpose would be served by distinguishing the facts of the cases cited by the petitioner in support of its position. We think petitioner's sale of its preferred *29 stock represented an investment of equity capital by Jefferson Standard, and that the dividend payments in question were clearly a share of the profits earned on that investment and were not interest paid for the use of borrowed money. ; ; (C.A. 5, 1945), affirming a Memorandum Opinion of this Court dated July 31, 1944 [, affirmed , rehearing denied ; ; ; (C.A. 9, 1942), affirming a Memorandum Opinion of this Court dated January 28, 1942; (C.A. 5, 1942), affirming a Memorandum Opinion of this Court dated February 28, 1942; (C.A. 4, 1940), affirming ; ; *30 ; ; Aside from all other evidence in the record which persuades us that the stock in question represented equity capital, there is an additional reason which prompts us to uphold the respondent's determination. Petitioner's general counsel testified at the hearing that the Virginia Commission, in 1949, would not have permitted petitioner to borrow additional funds by issuing long-term debenture bonds. He testified that the Commission, in fact, thought that petitioner's debt ratio was excessive and that it should promptly secure additional equity capital. The courts have long relied on the rule that a taxpayer will not be presumed to have violated a State or Federal law. And thus we would not presume here that petitioner deliberately violated the requirements of the regulatory body, under which it was permitted to operate, by borrowing money under the guise of selling an equity capital issue. ; ; . *31 Petitioner agreed that if we held the payments in question were, in fact, dividends, the expenses incurred incident to the issuance of the preferred shares were not deductible. Decision will be entered for the respondent.